IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

DAN K. ARNOLD,

      Plaintiff,

v.

KJD REAL ESTATE, LLC,
GEISSLER ROOFING CO., INC., and
D&D PROPERTY MANAGEMENT, INC.,

      Defendants.                            Case No. 10-cv-913-DRH-CJP

<u>MEMORANDUM & ORDER</u>

HERNDON, Chief Judge:

## I.  <u>Introduction</u>

Before the Court is Interpleader Plaintiff's Motion for Writ (Doc. 8), filed pursuant to the All Writs Act, **28 U.S.C. § 1651(a)** against interpleader defendants Geissler Roofing Co., Inc. ("Geissler") and D&D Property Management, Inc. ("D&D"), and Plaintiff's Attorney's corresponding Affidavit supporting the Motion for Writ (Doc. 13). Plaintiff seeks a writ from the Court, enjoining and restraining Geissler and D&D from continuing to prosecute a Motion to Enforce Settlement Agreement they have recently filed in the Circuit Court of St. Clair County, Illinois. The Motion is currently set for a hearing in state court on December 16, 2010. Plaintiff contends that a ruling from the state court will severely impact and frustrate the outcome of

his Complaint for Interpleader (Doc. 2), filed with this Court, leaving him with no adequate remedy.  There is no Response on file from either Geissler or D&D to Plaintiff's Motion for Writ, as it appears from the record that although they have been served, they have not yet entered their appearance, as their answer is not due until December 27, 2010 (*see* Docs. 6 & 7).  There is, however, a Response on file by interpleader defendant KJD Real Estate, LLC (Doc. 12).  For the reasons set forth herein, Plaintiff's Motion for Writ shall be granted, temporarily to preserve the status quo in order to allow more facts to come to light.

## II. Background

In his Complaint for Interpleader, Plaintiff alleges that he is a former officer and employee of Geissler and also a former officer and/or director of D&D.  As such, he is the owner of at least 95 shares of Geissler stock and 50% of the stock of D&D (Doc. 2, ¶ 7).  In 1999, Plaintiff filed suit (hereinafter the "1999 lawsuit") in the Circuit Court of St. Clair County, Illinois, against Geissler, D&D and their president, David Owen and Geissler's other shareholder, Brenda Owen (*Id*. at ¶ 8).  The 1999 lawsuit, captioned *Arnold v. Owen, et al.*, No. 99-CH-639, sought a declaratory judgment that Plaintiff owned 50% of the shares of Geissler, damages for being terminated as an officer and employee of Geissler and having his salary withheld, as well as an order to dissolve Geissler and distribute its assets to the shareholders, including Plaintiff, in proportion to their respective ownership interests (*Id*. at ¶¶ 8-9).  In addition, in the 1999 lawsuit, Plaintiff sought an order dissolving D&D and directing the distribution of its assets to the shareholders in proportion to

their respective interests, alleging that the shareholders had been deadlocked and could no longer conduct business (*Id*. at ¶ 10).

The 1999 lawsuit finally drew to what seemed a conclusion in 2006, when Plaintiff alleges that the parties engaged in settlement negotiations (*Id*. at ¶ 11). However, Plaintiff also alleges that the parties were never able to agree upon or execute a settlement agreement (*Id*.). Yet, it seems to be the position of both Geissler and D&D that the parties did, in fact, agree to a settlement of the 1999 lawsuit, because in January 2007, Geissler and D&D filed a Motion to Enforce Settlement, requesting that the Court enforce the settlement and in the alternative, dismiss the case (*Id*. at ¶ 12, Ex. A). The state court thereafter dismissed the 1999 lawsuit, with prejudice, on April 2, 2007, upon the parties' consent motion (*Id*. at ¶ 13, Ex. B).

Several weeks later, on April 23, 2007, Plaintiff entered into a Stock Purchase Agreement with the third interpleader defendant in this case, KJD Real Estate, LLC ("KJD"), by which Plaintiff sold his stock in Geissler and D&D to KJD (*Id*. at ¶ 14, Ex. C). KJD then sent a letter to Geissler and D&D, on or about May 17, 2007, to advise them of its acquisition of stock from Plaintiff, as well as to demand to view the companies' books and records (*Id*. at ¶ 15). In an effort to compel the production of the books and records, KJD thereafter filed suit, on June 5, 2007, against Geissler and D&D in the Circuit Court of St. Clair County, Illinois, in a case entitled *KJD Real Estate, LLC v. Geissler Roofing, Co., Inc. and D&D Property Management, Inc.*, No. 07-MR-143 (*Id*. at ¶ 16). This suit, coupled with Plaintiff's previous sale of stock to KJD, likely spurred the filing of a separate action by

Geissler and D&D against Plaintiff on June 11, 2007 (hereinafter the "2007 lawsuit") in the Circuit Court of St. Clair County, Illinois, which sought to vacate the prior dismissal with prejudice entered in the 1999 lawsuit and to further enforce the settlement Geissler and D&D allege they agreed upon with Plaintiff in the 1999 lawsuit (*Id.* at ¶ 17).[1]

While their 2007 lawsuit was pending, Plaintiff states that Geissler and D&D also filed a separate Complaint for Specific Performance against him in the same court, but before a different judge, to enforce the same settlement agreement (hereinafter the "Specific Performance lawsuit"): *Geissler Roofing Co., Inc. and D&D Property Management, Inc. v. Arnold*, No. 07-CH-1044.  Claiming that his counsel was never notified of the Specific Performance lawsuit, Plaintiff states that an ex parte default judgment was entered against him on April 2, 2008 in the Specific Performance lawsuit.  This default judgment allegedly requires Plaintiff to execute unspecified settlement documents (*Id.* at ¶¶ 21-22).  The following day, Plaintiff alleges that the parties appeared for a hearing in the 2007 lawsuit on the Motion to Vacate Dismissal and Enforce and although counsel for Geissler and D&D obtained a continuance of the hearing, they never disclosed to the court nor Plaintiff's counsel that they had already obtained a default judgment against Plaintiff the day before in

---

[1]  Geissler and D&D allege that the settlement required Plaintiff to transfer his stock back to Geissler and D&D in return for their payment of $207,500 (Doc. 2, ¶ 18).  Plaintiff maintains that a settlement was never agreed upon by the parties in the 1999 lawsuit, let alone an agreement executed.  Further, Plaintiff states that Geissler and D&D never tendered any part of the $207,500 purchase price to him (*Id.* at ¶ 18).  Yet, Plaintiff claims that KJD has already tendered to him the sum of $100,000 as partial payment under their Stock Purchase Agreement (*Id.* at ¶ 19).

the Specific Performance lawsuit, to enforce the same exact settlement (*Id*. at ¶ 23).
It was not until May 13, 2008, at the continued hearing in the 2007 lawsuit, that
counsel disclosed to Plaintiff's counsel that they had obtained a default judgment
against Plaintiff in the Specific Performance lawsuit (*Id*. at ¶ 24).  Despite Plaintiff's
subsequent efforts to vacate the default judgment, he was unsuccessful (*Id*. at ¶ 25).
Plaintiff also appealed the default judgment, which was recently denied (*Id*. at ¶ 26).

       Plaintiff therefore believes these events give rise to the need for
interpleader relief in the instant matter, in that there is a default judgment against
him directing him to sell his shares back to Geissler and D&D, however, Plaintiff had
previously contractually obligated himself to sell these same stock interests to KJD
via the Stock Purchase Agreement, believing he was freely able to do so.  Thus,
Plaintiff claims he cannot now safely determine his liability as between interpleader
defendants Geissler, D&D and KJD (*Id*. at ¶ 29).  As such, Plaintiff claims he is at
risk and exposed to double or multiple liability with respect to the proper entity to
transfer his stock interest in the Geissler and D&D stock.

       Plaintiff now states that the reason for seeking a writ in the instant
motion lies behind the fact that a hearing has been set for next Thursday, December
16, 2010, in the 1999 lawsuit on a Motion to Enforce Settlement, recently filed by
Geissler and D&D.  In fact, Plaintiff makes note of how *prior* to the Motion to Enforce
being filed, counsel for Geissler and D&D appeared to indicate that waiver of service
of Plaintiff's Complaint for Interpleader in this case (Docs. 2 & 13) would be
acceptable.  It was not, however, until the day Plaintiff's counsel was informed of the

Motion to Enforce and the upcoming December 16, 2010 hearing in state court that counsel for Geissler and D&D also informed Plaintiff's counsel that he had been instructed not to accept service.  Therefore, Plaintiff had to effect service on Geissler and D&D, which occurred on December 6, 2010.  However, as previously stated, these interpleader defendants have not yet entered their appearance, answered or otherwise plead in this case, as their answer is not due until December 27, 2010.

### III.  <u>Discussion</u>

Plaintiff moves for relief pursuant to the All Writs Act ("AWA"), which states:

> The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law.

**28 U.S.C. § 1651(a)**.  While the AWA enables this Court to issue a writ of and injunctive nature, it must also abide by the parameters set forth in Anti-Injunction Act, which states:

> A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.

**28 U.S.C. § 2283**.

It has been said that the heart of the Anti-Injunction Act is Congress' "confidence in state courts."  ***Zurich American Ins. Co. v Superior Court for the State of California***, **326 F.3d 816, 826 (7th Cir. 2003) (citation omitted)**.  In other words, when asked to enjoin a state court proceeding, federal courts must

adhere to "the principles of equity, comity, and federalism" and only grant injunctive relief if the movant demonstrates the "traditional equitable requirements such as irreparable harm for which there is no adequate remedy at law." **Id. at 824-25 (citations omitted)**. Yet, there are times when a federal court may enjoin state court proceedings if "necessary to prevent a state court from so interfering with a federal court's consideration or disposition of a case as to seriously impair the federal court's flexibility and authority to decide that case." **Id. at 825 (citation omitted)**. Such a circumstance would be justified by the "necessary in aid of its jurisdiction" exception of the Anti-Injunction Act. **Id.** Further, the Seventh Circuit has acknowledged that federal courts presiding over certain interpleader actions may stay pending state court proceedings involving the same interpled fund under the "necessary in aid of its jurisdiction" exception to the Anti-Injunction Act. **General Railway Signal Co. v. Corcoran, 921 F.2d 700, 707- (7th Cir. 1991) (citing Pan American Fire & Casualty Co. v. Revere, 188 F. Supp. 474 (E.D. La. 1960))**.


Additionally, the Court finds that the nature of the relief sought by Plaintiff herein similar to that of a motion seeking a temporary restraining order ("TRO"). Accordingly, the Court, in its analysis, must also adhere to the requirements of **FEDERAL RULE OF CIVIL PROCEDURE 65(b)(1)**, which allows for the court to issue a temporary restraining order, without written or oral notice to the adverse party or its attorney if: "(1) specific facts in an affidavit or a verified

complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and (2) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required."

The Court finds that situation at bar fits within the "necessary in aid of its jurisdiction" exception to the Anti-Injunction Act as well as the requirements of Rule 65(b) to warrant issuance of a TRO. As Plaintiff has clearly shown, should the hearing in state court proceed on December 16, 2010, and if there is a ruling made, it will likely have an immediate and irreparable injurious effect upon Plaintiff, in such that he will possibly be exposed to multiple liabilities regarding the same stock interests (*see* Docs. 2, 8 & 13). The determination of such multiple liabilities is exactly what an interpleader suit is designed to resolve. As KJD points out in its Response, it is not even a party to the proceedings in state court, so a ruling there would not take into account its competing interests (Doc. 12). A judgment in the state court proceedings could be inconsistent with any judgment rendered by this Court in the instant matter. It could, in short, seriously impair this Court's ability to decide the instant interpleader matter. Because defendants Geissler and D&D have chosen not to waive service and have not yet entered their appearance in this matter, answered or otherwise plead or responded to Plaintiff's Motion for Writ, the Court is unable to entertain any arguments opposing the issuance of a TRO. Plaintiff has also clearly shown that counsel for Geissler and D&D have received notice and copies of all of Plaintiff's filings in this interpleader suit (Doc. 13).

The Court reached out to its state court colleagues in an effort to avoid this formal action. Upon talking to the first judge who was identified as the presiding judge in the state court action, the undersigned was advised that the case had been reassigned to another judge. Upon discussing the matter with that judge, the undersigned was advised that, in fact, it remained with the first judge to whom the undersigned spoke. Thereafter, numerous detailed voicemail messages have gone without response, leaving this judge to infer that the state court judge has no intention to work together with this federal judge, informally, to establish a period of status quo to allow a gathering of facts not just in aid of this court's jurisdiction, but in the search of a just and proper conclusion to this dispute. Consequently, this extraordinary step is required.

## IV.  Conclusion

For the reasons discussed herein, Plaintiff's Motion for Writ (Doc. 8) is **GRANTED**, the Court hereby issuing the following TRO:

In accordance with Rule 65(b), the Court hereby **TEMPORARILY ENJOINS** and **RESTRAINS** the parties to *Arnold v. Owen, et al.*, Case No. 99-CH-639, filed in the Circuit Court for the Twentieth Judicial Circuit of St. Clair County, Illinois, from pursuing or filing any pleadings in the aforementioned case until released by this Court to do so or until the injunction of this court expires by in own terms. That prohibition, of course, means the parties are enjoined from pursuing the Motion to Enforce Settlement set for December 16, 2010, or any other date, unless further released by this U.S. District Court.   Furthermore, the Twentieth Judicial Circuit Court is enjoined from entering any orders until the injunctions of this Court are dissolved by their terms or through expiration and pursuant to the All Writs Act, **28 U.S.C. § 1651(a),** and is directed to enter a stay in this case until further order of this court. The intent of this

Court is to maintain the status quo in the state court in aid of the federal court's jurisdiction and to provide that court with an opportunity to determine the appropriate forum to resolve the dispute between the Parties involved herein.

This Order shall expire fourteen (14) days from the date of issuance, pursuant to Rule 65(b)(2), unless the Court rules otherwise.  Also in accordance with Rule 65, the Court will conduct a Preliminary Injunction hearing on this matter on **Thursday, December 23, 2010** at **9:00 a.m.**  Plaintiff shall use his best efforts to give notice to all Parties.  Lastly, any and all briefings regarding preliminary injunction issues shall be filed by **Tuesday, December 21, 2010**.

**IT IS SO ORDERED**.

Signed this 15th day of December, 2010.

David R. Herndon
2010.12.15
20:57:51 -06'00'

**Chief Judge**
**United States District Court**