**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| DAN K. ARNOLD,                                      ) | |
|                                                     ) | |
|        Plaintiff,           ) | |
|                                                     ) | |
| vs.                                                 ) | **Case No. 10-CV-913-NJR** |
|                                                     ) | |
| KJD REAL ESTATE, L.L.C., GEISSLER                   ) | |
| ROOFING CO., INC., and D&D PROPERTY                 ) | |
| MANAGEMENT, INC.,                                   ) | |
|                                                     ) | |
|       Defendants.          ) | |
|                                                     ) | |
| KJD REAL ESTATE, L.L.C.,                            ) | |
|                                                     ) | |
|    Counterclaim Plaintiff,            ) | |
|                                                     ) | |
| vs.                                                 ) | |
|                                                     ) | |
| DAN K. ARNOLD,                                      ) | |
|                                                     ) | |
|    Counterclaim Defendant.            ) | |
|                                                     ) | |
|                                                     ) | |
| KJD REAL ESTATE, L.L.C.,                            ) | |
|                                                     ) | |
|    Cross-Claim Plaintiff,             ) | |
|                                                     ) | |
| vs.                                                 ) | |
|                                                     ) | |
| GEISSLER ROOFING CO., INC., and D&D                 ) | |
| PROPERTY MANAGEMENT, INC.,                          ) | |
|                                                     ) | |
|    Cross-Claim Defendants.            ) | |
|                                                     ) | |

# <u>MEMORANDUM AND ORDER</u>

**ROSENSTENGEL, District Judge:**

      This is an action for interpleader, pursuant to Federal Rule of Civil Procedure 22,

commenced by Plaintiff Dan Arnold ("Arnold") on November 12, 2010, against

Defendants Geissler Roofing Co., Inc. ("Geissler"), D&D Property Management ("D&D"), and KJD Real Estate, L.L.C. ("KJD") in order to resolve conflicting claims to stock owned by Arnold (*see* Doc. 2). KJD cross-claimed against Geissler and D&D (collectively, the "Corporate Defendants") seeking a declaration that it owns the stock and, in the alternative, counterclaimed against Arnold seeking rescission of the Stock Purchase Agreement and return of the $100,000.00 paid under that agreement (Doc. 9).

The Court has thoroughly reviewed the convoluted record before it. For the reasons set forth below, the Court finds that the Corporate Defendants have a superior right to the stock.

## **Factual and Procedural Background**

### A.  *The Geissler and D&D Stock*

Arnold is a former officer, employee, and/or director of the Corporate Defendants (Doc. 35, ¶ 5). He owned approximately ninety-five shares of Geissler stock and fifty percent of the stock in D&D (Doc. 35, ¶ 6). The Geissler By-Laws contained explicit provisions regarding the transfer of Geissler stock. Article II, sections 5 and 6, established the procedure for the transfer of stock and provided in relevant part:

> Transfers of stock shall be made only on the books of the corporation; and the old certificate, properly endorsed, shall be surrendered and cancelled before a new certificate is issued…In case of loss or destruction of a certificate of stock, no new certificate shall be issued in lieu thereof except upon satisfactory proof to the board of directors of such loss or destruction; and upon the giving of satisfactory security, by bond or otherwise, against loss to the corporation. Any such new certificate shall be plainly marked "Duplicate" upon its face.

(Doc. 121-1). [1]

Article VIII restricted the transfer of Geissler stock and stated, in pertinent part:

[N]o sale or transfer of any shares of stock of this corporation shall be made without first offering same to the remaining stockholders of the company through the president of the company at par face value with six (6) per cent added from the time of the last annual meeting up to the date of sale or transfer. And it is further stipulated and agreed in consideration of said agreements herein contained that in every case upon any sale or transfer, the transferee shall sign these bylaws which are hereby made a contract agreement between all stockholders…

(Doc. 121-1).

The transfer restriction was also written conspicuously on the face of the

Geissler stock certificates:

This certificate is issued and is accepted by the holder hereof expressly subject to a contract agreement embodied in the by-laws of Geissler Roofing Co., Inc., which the holder hereof has signed and agreed to, and which provides that no sale or transfer of stock shall be made without first offering same to the remaining stockholders of the company, through the president of the company at par face value, with six (6%) per cent added from time of last annual meeting up to date of sale or transfer. And upon any sale or transfer, the transferee shall sign said by-laws and contract agreement.

(Doc. 121-2). Arnold, as Geissler's secretary, signed the certificate with the

restrictive language (*Id*.). The D&D stock at issue does not contain a transfer

restriction (*see* Doc. 67, at p. 45).

---

[1] A number of exhibits discussed by the parties in their briefings and at a bench trial held on March 15, 2012, before now retired District Judge G. Patrick Murphy were never filed with the Court. Accordingly, contemporaneously with this Order, the Court has filed the following documents: the Geissler By-Laws; Trial Exhibit 29, the Geissler Stock certificate issued to Arnold; and Trial Exhibit 23, the Rule 23 Order of the Appellate Court of Illinois, Fifth District.

B. *State Court History*

In 1999, Arnold sued the Corporate Defendants, David Owen (the President of Geissler) and Brenda Owen (Geissler's other shareholder), in Illinois state court alleging claims of shareholder oppression (the "original lawsuit") (Doc. 35, ¶ 7). The original lawsuit proceeded for over seven years (Doc. 35, ¶ 10).[2]

On November 22, 2006, an order was entered tentatively setting the original lawsuit for trial beginning on November 30, 2006 (Doc. 121-3, p. 2). The trial never occurred (*Id.*). Rather, in late November 2006, prior to the scheduled trial setting, the parties agreed to settle the original lawsuit (*see* Doc. 35-1). Pursuant to the terms of the settlement, Arnold agreed to transfer his stock to the Corporate Defendants in return for the sum of $207,500.00 (Doc. 35-6). The parties never executed any settlement documents, however, and the Corporate Defendants never paid Arnold any portion of the consideration for the settlement (Doc. 35, ¶ 12).

In January 2007, the Corporate Defendants filed a motion to enforce the settlement of the original lawsuit, asserting that the parties had entered into a full and final settlement in November 2006 (Doc. 35-1). According to the motion, Arnold's attorney, George Marifian, had actual authority to settle Arnold's claims, but Arnold refused to execute the settlement documents (*Id.*).

On March 29, 2007, Arnold moved for a voluntary dismissal of the original lawsuit with prejudice (Doc. 35-2). In his motion, Arnold averred that the Corporate

---

[2] KJD was never a party to the original lawsuit (Doc. 100, p. 1).

Defendants had made an offer in compromise and full settlement of the original lawsuit, but that he rejected the offer (Doc. 35-2). On April 2, 2007, the trial court granted Arnold's motion (apparently with the consent of the Corporate Defendants) and dismissed the original lawsuit with prejudice (Doc. 35-3). The trial court did not rule on the motion to enforce the settlement (*Id.*).

On April 23, 2007, Arnold agreed to sell his stock to KJD for $290,000.00 (Doc. 35, ¶ 15). Pursuant to the Stock Purchase Agreement, the purchase price was to be paid in two installments (Doc. 35-4). The initial payment of $100,000.00 was due at "closing"[3] (Doc. 35-4, pp. 1-2). The deferred payment was due after certain conditions were satisfied or waived by KJD, including:

> 2(c)(1): Buyer shall have received stock certificates issued in Buyer's name for the D&D Stock and the Geissler Stock; and

> 2(c)(2): [A]ll rights, claims and interests in and to the D&D Stock and the Geissler Stock by anyone other than Buyer, including but not limited to claims by any person purporting to be entitled to purchase the D&D Stock, or to purchase the Geissler Stock pursuant to Article VIII of the Bylaws of Geissler Roofing Co., Inc. shall be either waived in fact, or finally determined by a court of law, with all appeals concluded, to have been waived or extinguished.

> 2(d):    "Notwithstanding anything herein to the contrary, in the event the conditions described in Subsections 2(c)(1) and 2(c)(2) above have not been satisfied by December 31, 2007, Buyer shall no later than January 10, 2008, provide written notice to Seller that Buyer has elected either: (i) to pay the Deferred payment to Seller, or (ii) to convey the Geissler Stock back to Seller…"

---

[3] In the Stock Purchase Agreement, "closing" of the sale was defined as "Buyer's delivery of a check to Seller in the amount of the Initial Payment simultaneously with Buyer's and Seller's execution and delivery of [certain documents, including the Stock Purchase Agreement, a Stock Power and Assignment, Lost Stock Affidavits, a resignation by Seller as to all positions held with the Corporate Defendants, notice letter to the Corporate Defendants, and an assignment of claims]" (Doc. 35-4, pp. 2-3).

(Doc. 35-4, p. 2).

KJD paid the initial payment in the amount of $100,000.00 to Arnold (Doc. 35, ¶ 15). But KJD never acquired the stock certificates, and the conditions provided for in the Stock Purchase Agreement were never satisfied (*see* Doc. 67, p. 66). In the Stock Purchase Agreement, Arnold represented to KJD that he was the owner of the stock and that he had "good and indefeasible title" to the stock, free and clear of, among other things, any restrictive agreement or transfer restrictions, whether oral or written, express or implied (Doc. 35-4). As part of the agreement, Arnold executed an "Affidavit of Lost Stock Certificate" averring that, despite making a diligent search for the stock certificates, they were lost (*see* Doc. 35-4).

On May 17, 2007, KJD notified the Corporate Defendants that it had purchased the stock and requested to inspect the corporate books and records (Doc. 35, ¶ 19). When KJD received no response from the Corporate Defendants, it filed suit in Illinois state court (the "KJD lawsuit") on June 5, 2007 (*see* Doc. 100, p. 2). KJD sought a declaration that it owned the stock purchased from Arnold, an order compelling the Corporate Defendants to allow it to inspect the corporate books, as well as statutory penalties. Arnold was not a party to the KJD lawsuit.[4]

On June 11, 2007, the Corporate Defendants filed a petition to vacate the dismissal of the original lawsuit and to enforce the settlement (the "2007 Petition to Reopen"), reiterating their view that the original lawsuit had been settled (Doc. 35-5).

---

[4] The Court understands that the KJD lawsuit has been stayed since February 3, 2009 (*see* Doc. 100).

According to the 2007 Petition to Reopen, a part of the settlement agreement was that Arnold would transfer back to the Corporate Defendants any and all shares of stock to which he claimed ownership (*Id.*). The petition further alleged that Arnold attempted to assign his interest in the stock to KJD under the advice of Joe Kehrer, who "induced, encourage, aided, and abetted" Arnold in breaching the settlement of the original lawsuit (*see* Doc. 35-5). KJD was not a party to the 2007 Petition to Vacate.

In September 2007, the Corporate Defendants filed a second lawsuit against Arnold seeking specific performance of the settlement reached in the original lawsuit (the "2007 Specific Performance lawsuit") (Doc. 35-6). The 2007 Specific Performance lawsuit was before a different judge than the original lawsuit (*Id.*).  Although Arnold was properly served, he did not appear (Doc. 121-3, p. 4). As a result, on April 2, 2008, the Corporate Defendants obtained a default judgment against Arnold in the 2007 Specific Performance lawsuit (Doc. 35-6, p. 5). The default judgment ordered Arnold to execute settlement documents and comply with the terms of the settlement agreement in the original lawsuit (*Id.*). Despite the Corporate Defendants' knowledge of KJD's interest in the stock, KJD was never joined as a party in the 2007 Specific Performance lawsuit (Doc. 35, ¶ 28).

Following the default judgment against Arnold in the 2007 Specific Performance lawsuit, proceedings in the 2007 Petition to Reopen continued. On April 3, 2008, without informing the court or Arnold's counsel of the default judgment entered the previous day, the Corporate Defendants requested a continuance of the motion to

vacate (Doc. 35, ¶ 25). At a subsequent hearing, the Corporate Defendants informed the trial court of the default judgment, which by that time had become final under Illinois law (Doc. 35, ¶ 26).

On June 11, 2008, Arnold filed a petition to vacate the default judgment in the 2007 Specific Performance lawsuit. In December 2008, following an evidentiary hearing, the trial court entered an order denying the petition to vacate (Doc. 35-6, pp. 6-7). The court further found that there had been a valid settlement agreement regarding the original lawsuit (*Id.*). Arnold was ordered to execute the settlement documents and comply with the terms of the settlement agreement in the original lawsuit (*Id.*).

Arnold then moved the Illinois Appellate Court to vacate the default judgment (Doc. 121-3). On March 17, 2010, the appellate court affirmed the trial court (*Id.*). Following the appellate court's decision, Arnold found himself in a quandary. Specifically, he had conveyed the same stock to two separate entities: KJD, pursuant to the Stock Purchase Agreement, and the Corporate Defendants pursuant to the default judgment in the 2007 Specific Performance lawsuit.

C.  *Federal Court History*

To resolve his predicament, Arnold filed this federal lawsuit in November 2010, invoking the Court's diversity of citizenship jurisdiction and relying on Federal Rule of Civil Procedure 22 as the basis for his interpleader action (*see* Doc. 2). On March 6, 2012, a bench trial was held before District Judge G. Patrick Murphy (Doc. 67).

At trial, Arnold testified that at the time they executed the Stock Purchase Agreement, KJD was aware of the dispute in the original lawsuit (Doc. 67, pp. 102-104). Arnold further testified that he was cognizant of the stock transfer restriction (Doc. 67, p. 109). Although he signed the Affidavit of Lost Stock Certificate, Arnold admitted that he had taken the stock certificates to Marifian's office (Doc. 67, pp. 110-111). Marifian also testified at trial that the stock certificates were in his possession and locked in his office safe (Doc. 67, pp. 118-119). Regarding the D&D stock, Marifian testified that he did not believe the corporation ever issued shares (Doc. 67, p. 120). Joe Kehrer testified that KJD regularly bid against Geissler on public works jobs (Doc. 67, p. 67).

Following the bench trial, Judge Murphy ordered Arnold to repay KJD the $100,000.00 which was tendered to Arnold by KJD pursuant to the Stock Purchase Agreement (Doc. 65). Judge Murphy dismissed all other claims, including KJD's counterclaim against Arnold and KJD's cross-claims against the Corporate Defendants, finding that the *Rooker-Feldman* doctrine[5] barred Arnold's interpleader suit (Doc. 65). KJD appealed the Judgment to the United States Court of Appeals for the Seventh Circuit.

---

[5] The *Rooker-Feldman* doctrine provides, generally, that the power to review state-court judgments lies, if at all, only in the United States Supreme Court, not the lower federal courts. *See District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 482 (1983) (citing 28 U.S.C. § 1257); *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 415-16 (1923). The *Rooker-Feldman* doctrine precludes federal subject matter jurisdiction when (1) a losing party in state court files suit in federal court complaining of an injury caused by the state-court judgment, and seeks review and rejection of that judgment; and (2) the losing party files the federal complaint after the state-court proceedings have ended. *See TruServ Corp. v. Flegles, Inc.,* 419 F.3d 584, 590 (7th Cir. 2005).

Meanwhile, while the federal appeal was pending, the Corporate Defendants filed a motion to enforce the settlement in state court (Doc. 100, pp. 3-4). [6] A hearing was held on April 5, 2012 (*Id*.). The state court granted the motion to enforce and ordered Arnold to execute a stock assignment to the Corporate Defendants (*Id*.). Arnold executed the stock assignment, and the Corporate Defendants tendered payment of $207,500.00 to Arnold pursuant to the settlement agreement in the original lawsuit (*Id*.). Again, KJD was not a party to the proceedings (*Id*.).

On appeal, the Seventh Circuit reversed and remanded. *See Arnold v. KJD Real Estate*, 752 F.3d 700, 707 (7th Cir. 2014). The Seventh Circuit held that Arnold's claim in this federal interpleader lawsuit was independent of the state court's judgment, even though it denies the legal conclusion that the state court reached. In other words, Arnold is not disputing that the state court's default judgment, which adjudicated the rights between himself and the Corporate Defendants, was a valid and binding judgment; rather, he simply requests this Court to determine whose property right is superior in order to avoid exposure to double liability from his conflicting obligations to transfer the stock (*see* Doc. 90-2). At the end of its opinion, the Seventh Circuit suggested that *Wilton-Brillhart* abstention[7] might be appropriate in this case because of the ongoing litigation between the parties in state court. *See Arnold*, 752 F.3d at 707.

---

[6] At some point, the original lawsuit and the 2007 Specific Performance lawsuit were consolidated in state court (*see* Doc. 100).

[7] The *Wilton-Brillhart* abstention doctrine was developed in the cases of *Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995), and *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491 (1942). The doctrine dictates that a federal district court has discretion to dismiss or stay claims seeking declaratory relief when there is an ongoing state court action that presents the same issues, not governed by federal law, between the same parties.

On remand, this matter was reassigned to the undersigned district judge (Doc. 89). In order to determine whether *Wilton-Brillhart* abstention applied, the Court instructed the parties to file briefs addressing the current status of the state court litigation and whether abstention was appropriate (Doc. 92). The parties filed timely responses to the Court's Order (*see* Docs. 93-95, 97-100).

On February 3, 2015, the Court found that *Wilton-Brillhart* abstention was not appropriate because there was no ongoing state court action presenting the same issues between the same parties to this action (Doc. 102). Specifically, the only ongoing state court litigation (which is currently stayed), is the KJD lawsuit. Arnold is not a party to that litigation. Here, the Court is asked to decide who has a superior claim to Arnold's stock, KJD or the Corporate Defendants? During the *sixteen year* pendency of this litigation, no court has ever decided that exact issue. Additionally, the action pending before this Court seeks to absolve Arnold from any further liability regarding the stock at issue.

Having found that *Wilton-Brillhart* was not appropriate, the Court directed the parties to submit briefs, including citations to the record of the bench trial, and the reasons why they should prevail (*see* Doc. 102). Each party filed a timely response to the Court's Order (*see* Docs. 114-116).

---

*See Envision Healthcare, Inc. v. PreferredOne Ins. Co.*, 604 F.3d 983, 986 (7th Cir. 2010). This discretion arises from the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, which provides that district courts "*may* declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a) (emphasis added).

## Analysis

Interpleader is an equitable procedure utilized "when the stakeholder is in danger of exposure to double liability or the vexation of litigating conflicting claims." *Aaron v. Mahl,* 550 F.3d 659, 663 (7th Cir. 2008) *citing Indianapolis Colts v. Mayor and City Council of Baltimore,* 741 F.2d 954, 957 (7th Cir. 1984). A party may bring an interpleader action under Rule 22 of the Federal Rules of Civil Procedure or pursuant to 28 U.S.C. § 1335. Arnold brought this interpleader action pursuant to Rule 22.

Rule 22 provides that "[p]ersons with claims that may expose a plaintiff to double or multiple liability may be joined as defendants and required to interplead." FED. R. CIV. P. 22(a)(1). Rule 22, however, unlike statutory interpleader under 28 U.S.C. § 1335, does not create jurisdiction. Thus, the Court must still have federal subject matter jurisdiction in order to hear an interpleader petition. *See also Commercial Nat'l Bank of Chicago v. Demos,* 18 F.3d 485, 488 (7th Cir. 1994) (noting that Rule 22 "provides a procedural framework for interpleader actions, but it does not confer subject matter jurisdiction on federal courts."). As a result, Rule 22 requires the existence of a federal question or complete diversity of citizenship between the plaintiff-stakeholder and the defendant-claimants and, for diversity purposes, an amount in controversy in excess of $75,000.00, exclusive of interest and costs.

An interpleader action typically involves two stages. *See Mahl,* 550 F.3d at 663. In the first stage, the district court decides whether the requirements for rule or statutory interpleader have been met by determining if there is a single fund at issue and whether

there are adverse claimants to that fund. *Id*. Second, the court determines the respective rights of the claimants to the interpleaded funds. *Id*. When there is no genuine issue of material fact, the second stage may be adjudicated at summary judgment, and if there is a trial, each claimant must prove their right to the fund by a preponderance of the evidence. *Id*.

The matter before the Court is a proper interpleader action. As an initial matter, there is complete diversity between Arnold (the stakeholder) and the Defendants (the claimants): Arnold is a citizen of Florida; KJD is a limited liability company whose sole members are Joseph Kehrer and Dawn Kehrer, citizens of Illinois; the Corporate Defendants are Illinois corporations with their principal place of business in Belleville, Illinois (*see* Doc. 2). Additionally, there is no dispute that the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

There is also a dispute between two adverse claimants: KJD and the Corporate Defendants. Each claimant has an asserted basis for a claim of right to the stock. KJD contends that it has superior title to the stock based on the Stock Purchase Agreement it entered into with Arnold in April 2007. On the other hand, the Corporate Defendants allege that their rights are superior based on the 2008 state court default judgment and provisions of the Illinois Commercial Code. The determination of such multiple liabilities is exactly what an interpleader suit is designed to resolve. Given that this is a

proper interpleader action, the Court may now determine the rights of the parties.[8]

KJD contends that it has superior title to the stock because it entered into the Stock Purchase Agreement with Arnold on April 23, 2007—almost one year before the Corporate Defendants obtained the state court default judgment. The Corporate Defendants counter that the Stock Purchase Agreement did not vest title of the stock to KJD because Arnold was restricted from selling the stock to KJD, and KJD never acquired an interest in the stock.

A.   Validity of the Geissler Stock Transfer Restriction

Illinois allows corporations and their shareholders to impose restrictions on the transfer of stock.[9]  Article 8 of the Illinois Commercial Code—Investment Securities, 810 Ill. Comp. Stat. 5/8–101 *et seq.*, addresses stock transfers. Section 5/8-204 authorizes restrictions on the transfer of stock, and states as follows:

> A restriction on transfer of a security imposed by the issuer, even if otherwise lawful, is ineffective against a person without knowledge of the restriction unless:
> (1) the security is certificated and the restriction is noted conspicuously on the security certificate; or
> (2) the security is uncertificated and the registered owner has been notified of the restriction.

810 Ill. Comp. Stat. 5/8-204.

The basic theory is to permit the owners of a corporation to control its ownership

---

[8] Because a bench trial was previously held in this matter, the parties have submitted the case on their briefs (Docs. 114-116), written stipulation of facts (Doc. 35), stipulated trial exhibits (Doc. 67), as well as the trial testimony (Doc. 67).

[9] Where jurisdiction is based on diversity of citizenship, the resolution of substantive issues is determined by the applicable state law. *LaSalle Nat. Bank v. Serv. Merch. Co.*, 827 F.2d 74, 78 (7th Cir. 1987).

and management by preventing outsiders from inserting themselves into the operations of the corporation. *See* 12 William Meade Fletcher et al, *Fletcher Cyclopedia of the Law of Private Corporations,* § 5454 (1996). "As a general matter, restrictions upon the right to transfer shares of corporate stock are permissible provided that those restrictions are reasonable and not contrary to any law or public policy." *Rench v. Leihser,* 139 Ill. App. 3d 889, 890-91, 487 N.E.2d 1201, 1202 (1986).

Transfer restrictions are usually contained in a corporation's articles of incorporation, bylaws, or in a shareholder's buy-sell agreement. *See Grandon v. Amcore Trust Co.,* 225 Ill. App. 3d 630, 633, 588 N.E.2d 311, 314 (1992). "A shareholder's agreement is a contractual arrangement in which the shareholders agree among themselves, or with the corporation, not to transfer or sell their stock to outsiders without first giving the shareholders or the corporation the opportunity to purchase their shares." *Id.; see also Vogel v. Melish,* 31 Ill.2d 620, 203 N.E.2d 411(1964) ("The essence of the stockholder's agreement is the granting of reciprocal options on the other parties' shares, or a right of first refusal on those shares, as it is sometimes called."); *Teschner v. Chicago Title and Trust Co.,* 59 Ill.2d 452, 457–58, 322 N.E.2d 54 (1974) (It is well-established that a corporation's bylaws constitute an enforceable contract between the corporation and its shareholders); *Norris v. South Shore Chamber of Commerce,* 98 Ill.App.3d 32, 424 N.E.2d 76, 77 (1981). For a party to be bound by stock transfer restrictions, that party must have notice of the restriction.

It is undisputed that the restriction on the Geissler stock was noted

conspicuously on the front of the stock certificates:

> "[N]o sale or transfer of stock shall be made without first offering same to the remaining stockholders of the company through the president of the company at par face value with six (6) per cent [sic] added from the time of the last annual meeting up to the date of sale or transfer."

(Doc. 121-2). It is also undisputed that Arnold had notice of the restriction; he testified at trial that he was aware of the restriction and acknowledged the restriction by signing the stock certificate.

The validity of the restriction is further buttressed by the express provision in Article VIII of the Geissler Bylaws. Specifically, Article VIII unambiguously prohibited Arnold from selling or transferring corporate stock without first offering it to the remaining stockholders. Thus, the Court finds that the stock restriction is valid and enforceable.

Likewise, the restriction was reasonable. The Court notes that bylaws restricting a transfer in closed corporations are sometimes essential to a successful enterprise. *See Groves v. Prickett*, 420 F.2d 1119, 1122 (9th Cir. 1970). Such bylaws are "necessary for the protection of the corporation and its stockholders against rivals in business or others who might purchase its shares for the purpose of acquiring information, which might thereafter be used against the interests of the company. " *Id*. at 1122. KJD and the Corporate Defendants are competitors—often bidding against each other on roofing contracts. As a stockholder, KJD would be entitled to request inspections of the corporate books and records—proprietary information that could have a detrimental effect on a corporation if in the wrong hands. Thus, the Court finds that the restriction

was reasonably necessary to prevent Geissler stock from being freely transferable to competitors such as KJD. [10]

KJD concedes that the Geissler stock was restricted but asserts that the Corporate Defendants are estopped from enforcing (and have waived any right to enforce) the transfer restriction because they failed to offer Arnold the opportunity to purchase Brenda Owens's shares in Geissler before she sold the shares to David Owen. The Court finds, however, that KJD lacks standing to challenge the validity of the stock transfer restriction in the Geissler By-Laws. "[O]nly a party to the contract or those in privity with a party may sue on the contract, except that a third-party beneficiary may sue on a contract made for his benefit." *White Hen Pantry v. Cha,* 214 Ill.App. 3d 627, 635, 574 N.E.2d 104, 109 (1991); *see also, e.g., Interim Healthcare, Inc. v. Home Solutions Sys. Equity Corp.,* No. 98 C 7419, 1999 WL 286082, at *5 (N.D.Ill. Apr.26, 1999) (a stranger to a contract has no standing to challenge the contract). Arnold does not argue that the transfer restriction is somehow invalid, and there is no evidence to support such a conclusion. Given the validity of the transfer restriction, the Court finds that Arnold was not authorized to sell his Geissler stock to KJD without first offering it to the Corporate Defendants.

B.   Delivery of the Stock Never Occurred

Pursuant to Illinois law, delivery must be made to effectuate the transfer of stock. *See* 810 Ill. Comp. Stat. 5/8-104 ("a person acquires a security or an interest therein

---

[10] Indeed, the Court notes how hastily KJD requested to inspect the Corporate Defendants' books and records after entering into the Stock Purchase Agreement.

under this Article if the person is a purchaser to whom a security is delivered pursuant to 8-301…"); *Frierdich v. Mottaz*, 294 F.3d 864, 868 (7th Cir.2002).  On that point, KJD hits a snag.

Section 5/8–301 specifies when delivery occurs in the case of both certificated and uncertificated securities. Delivery of a certificated security occurs, in pertinent part, when "the purchaser acquires possession of the security certificate," 810 ILL. COMP. STAT. 5/8–301(a)(1), or "another person ... either acquires possession of the security certificate on behalf of the purchaser, or having previously acquired possession of the certificate, acknowledges that it holds for the purchaser[.]" 810 ILL. COMP. STAT. 5/8–301(a)(2); *see also In re Phillips,* 379 B.R. 765, 784 (Bankr. N.D. Ill. 2007).

Without delivery, the Stock Purchase Agreement, in itself, could not act to validly transfer ownership of the stock. *See*, *e.g.*, *In re Billingsley*, 290 B.R. 345, 347 (Bankr. C.D. Ill. 2002) (The mere execution of a security agreement did not perfect interest in the stock without additional action, including possession pursuant to Sections 5/8–104 and 5/8–301). KJD has not cited Illinois law validating other types of delivery, nor has the Court's research uncovered any additional means of delivery.

Here, it is clear that KJD was never registered as the owner of the stock.[11] There is also no evidence that Arnold was holding the stock on behalf of KJD. Rather, the stock remained in Arnold's possession until he transferred it to the Corporate

---

[11] The Court notes that the alleged transfer also violated Article II of the Geissler By-Laws, which states, in relevant part: "transfers of stock shall be made only on the books of the corporation; and the old certificate, properly endorsed, shall be surrendered and canceled before a new certificate is issued…" No transfer on the books was ever completed.

Defendants in 2012 pursuant to the state court order. Indeed, when the state court ordered Arnold to transfer the stock to the Corporate Defendants, he was readily able to comply because he still possessed the stock—having never effectuated delivery to KJD.

Further, although Arnold averred in the Stock Purchase Agreement that the stock certificates were lost, the evidence is to the contrary. Arnold acknowledged that he gave the stock certificates to Marifian who kept them in his office safe. Had Arnold truly believed the stock certificates were lost, he could have arranged for new certificates to be issued pursuant to Section 5/8-405.[12] Arnold's lack of effort to have stock certificates re-issued to KJD and to have those certificates delivered pursuant to the Illinois Commercial Code supports the conclusion that he was quite aware of the transfer restriction on the face of the stock. Thus, although the parties entered into the Stock Purchase Agreement, that agreement was insufficient to pass title of the stock to KJD.[13]

---

[12] Section 5/8-405 provides for the replacement of a lost, destroyed, or wrongfully taken security certificate. Specifically, on becoming aware that a security has been lost, apparently destroyed, or wrongfully taken, the owner, in order to protect his or her interests, must notify the issuer of that fact within a reasonable time. The right of the owner to have a new security issued in place of the original security is dependent on the owner: (1) requesting such new security before the issuer has notice that the security has been acquired by a protected purchaser; (2) filing with the issuer a sufficient indemnity bond; and (3) satisfying any other reasonable requirements imposed by the issuer, such as an affidavit of the facts. *See* 810 ILL. COMP. STAT. 5/8-405. The Geissler By-Laws also provided the procedure for replacing lost certificates; procedures which were not followed by Arnold.

[13] The Court further notes that certain provisions in the Stock Purchase Agreement have never been fulfilled, including: 2(c)(1) – "Buyer shall have received stock certificates issued in Buyer's name for the D&D Stock and the Geissler Stock; 2(c)(2) – "All rights, claims and interests in and to the D&D Stock and the Geissler Stock by anyone other than Buyer, including, but not limited to, claims by any person purporting to be entitled to purchase the D&D Stock, or to purchase the Geissler Stock pursuant to Article VII of the Bylaws of Geissler Roofing Co., Inc. shall be either waived in fact, or finally determined by a court of law, with all appeals concluded, to have been waived or extinguished; and 2(d) which deals with

Citing *Home for Destitute Crippled Children v. Boomer*, 308 Ill.App. 170, 31 N.E.2d 812 (1941), KJD asserts that "in Illinois, a stock power and assignment is sufficient to pass title to shares even in the absence of delivery of a stock certificate" (*See* Doc. 116). KJD's citation to *Boomer*, a 1941 Illinois Appellate Court case, is misplaced. *Boomer* involved an *inter vivos* gift of corporate stock by symbolic delivery and was decided prior to the adoption of the Illinois Commercial Code. The stocks at issue in this matter involve a commercial transaction governed by the Code. In light of the express delivery provisions in the Illinois Commercial Code, KJD's reliance on this pre-Code authority is unavailing.

Other jurisdictions have reached the same conclusion in cases pertaining to delivery of stock pursuant to the U.C.C. *See Bankwest, N.A. v. Williams*, 347 N.W.2d 163, 164 (S.D. 1984) ("An endorsement of a security whether special or in blank does not constitute a transfer until delivery of the security on which it appears or if the endorsement is on a separate document until delivery of both the document and the security."); *United States v. Doyle,* 486 F.Supp. 1214, 1219 (D.C.Minn.1980) ("Actual transfer of physical possession is a prerequisite to delivery."); *Lanning v. Poulsbo Rural Tel. Ass'n,* 8 Wash.App. 402, 407, 507 P.2d 1218, 1222 (1973) (transfer does not occur until delivery of both the document and the security has been accomplished).

Given that it never took delivery of the stock, the Court finds that KJD never perfected its security interest pursuant to Sections 5/8-104 and 5/8-301. As a result,

---

the payment of the remainder of the contract price by a certain date—a date which has long since come and gone without Arnold fulfilling the terms of the contract.

when the state court entered default judgment in favor of the Corporate Defendants in the 2007 Specific Performance lawsuit—which required Arnold to comply with the terms of the settlement in the original lawsuit—title to the stock had not been properly vested to KJD. At that point, the Corporate Defendants retained superior title to the stock. But Arnold still owned the stock until 2012, when he was ordered by the state court to execute stock certificates and the Corporate Defendants were ordered to tender $207,500.00 to Arnold pursuant to the settlement agreement in the original lawsuit.

## Conclusion

For the reasons set forth above, it is **ORDERED** and **ADJUDGED** that the Corporate Defendants, Geissler Roofing Company, Inc., and D&D Property Management, Inc., are the rightful owners of the stock at issue. Arnold is hereby **ORDERED** to repay KJD the sum of $100,000.00 tendered to Arnold by KJD as the initial payment for Arnold's stock.

The Clerk of Court is **DIRECTED** to enter judgment accordingly and close this case on the Court's docket.

**IT IS SO ORDERED.**

**DATED:  August 13, 2015**

**s/ Nancy J. Rosenstengel**
**NANCY J. ROSENSTENGEL**
**United States District Judge**
